STATE OF NORTH CAROLINA v. ROSCO WILLIAM HALL

No. 19

(Filed 11 November 1977)

1. **Rape § 5— second degree rape—physical force—victim's resistance—sufficiency of evidence**

   Evidence in a second degree rape prosecution was sufficient to support the State's contention that defendant had carnal knowledge of the victim by force and against her will, though defendant made no verbal threats to the victim and though the victim offered no physical resistance, where the victim testified that she had intercourse with defendant against her will; she said that she repeatedly told him that she did not want to have intercourse; when defendant advanced toward her she screamed and began crying; and she testified that defendant grabbed her around the neck and choked her, and that this caused her to lose consciousness.

2. **Rape § 6— second degree rape—submission of lesser included offenses—error favorable to defendant**

   Where all of the State's evidence in a second degree rape case showed a completed act of intercourse, error of the trial court in submitting to the jury the lesser included offenses of rape was favorable to defendant.

APPEAL by defendant from *Kirby, J.,* at the 29 November 1976 Session of GASTON Superior Court.

On an indictment, proper in form, defendant was convicted of second degree rape and was sentenced to life imprisonment.

The State offered evidence which tends to show the following: Goldie Virginia Leach (Goldie) lived in Kings Mountain, North Carolina, was thirty-six years old, and had never married. She had seen defendant several times prior to 22 August 1976, but did not actually know him. She only knew him as "Tracy." On the morning of 22 August 1976, Goldie went to visit her boyfriend, one Charles Collins, at his home in Gastonia. When she arrived she saw Collins in his car with another woman, Geraldine. She followed the car to defendant's home on Morris Street. Goldie and Collins began arguing and Goldie swung a wrench at Collins. Collins grabbed the wrench from her and pushed her. Goldie then got into her car to drive uptown in order to take out a warrant for Collins, but on her way changed her mind and drove back to Morris Street. Upon her arrival there, she took a second wrench from her car and again started swinging it at Collins. Collins grabbed the wrench, threw it in the yard and knocked her down. At this

point, Goldie hit her head on the pavement, causing her to become unconscious. After she had regained consciousness, Collins left. The defendant then walked up to her and told her he was concerned about her physical condition. He offered his aid. Goldie agreed to go to his house in order to clean the blood off her face before returning to Kings Mountain. Upon arrival at his apartment, defendant gave her Q-tips and alcohol. She cleaned her face and told him that she had to go. He insisted that before she left she sign his autograph book. She did so. Defendant then offered to give Goldie some dresses. She refused his offer, and told him that she had to go to the hospital to be checked before returning home. She then attempted to leave, but defendant put his hand on the door to keep her from going.

Goldie testified that the defendant told her they "were going to do something before [she] left." She replied, "Tracy, please don't make me do something like that. I didn't come here for that." He said, "No, we're going to do something." Goldie then became scared and began crying and screaming. He told her that it would do no good to scream. She then asked for a towel to wipe off her face. Defendant walked into the bathroom to get a towel. At this time, Goldie attempted to get the door unlatched so that she could escape. There were two locks on the door and she was not able to get both unlocked before defendant returned from the bathroom. When he returned, defendant grabbed her arm and pushed her away from the door. He then grabbed her around the neck and started choking her. She started backing up and backed into the living room, through the kitchen and into the bedroom. Defendant still had his hand on her throat. He backed her to the foot of the bed. She fell onto the bed and then "passed out." When Goldie regained consciousness, defendant was having intercourse with her. She asked him to please let her go to the hospital. Defendant stopped and she pushed him away. He then told her that she could go to the hospital but that he would go with her so that he could bring her back to his apartment.

Goldie and defendant then went across the street to the home of Goldie's cousin, Ella Mae Leach. She told her cousin what defendant had done. Goldie and her cousin drove to the magistrate's office and then to the Gaston Memorial Hospital. The doctor who examined her found no sperm in her vagina. She said this was due to the defendant's failure to reach a climax.

Ella Mae Leach testified that on the morning of 22 August 1976 her cousin, Goldie Leach, came to her house with defendant. Goldie was upset and had been crying. She told Ella that the defendant had just choked and raped her.

Defendant did not testify in his own behalf nor did he offer any evidence.

Other evidence pertinent to decision will be set out in the opinion.

*Attorney General Rufus L. Edmisten, Senior Deputy Attorney General R. Bruce White, Jr., and Assistant Attorney General Guy A. Hamlin for the State.*

*Jim R. Funderburk for defendant appellant.*

MOORE, Justice.

Defendant alleges that the trial court erred in failing to grant defendant's motion for nonsuit at the close of the State's evidence and at the close of all the evidence.

When there is a motion for nonsuit in a criminal case, the evidence is to be considered in the light most favorable to the State, and the State is entitled to every reasonable inference of fact deducible from the evidence. *State v. McKinney,* 288 N.C. 113, 215 S.E. 2d 578 (1975); *State v. McNeil,* 280 N.C. 159, 185 S.E. 2d 156 (1971). "[T]he court is not concerned with the weight of the testimony but only with its sufficiency to carry the case to the jury and sustain the indictment. . . ." *State v. McNeil, supra,* at 162, 185 S.E. 2d at 157. *See State v. Primes,* 275 N.C. 61, 165 S.E. 2d 225 (1969). The question for the court is whether there is substantial evidence of each essential element of the crime charged, or of a lesser offense included therein, and of the defendant's being the perpetrator of such offense. If so, the motion is properly denied. *State v. Roseman,* 279 N.C. 573, 184 S.E. 2d 289 (1971); *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755 (1971).

Defendant in present case was charged with second degree rape. "Rape is the carnal knowledge of a female person by force and against her will. The force necessary to constitute rape need not be physical force. Fear, fright, or coercion may take the place of force." *State v. Hines,* 286 N.C. 377, 211 S.E. 2d 201

(1975). *See State v. Flippin*, 280 N.C. 682, 186 S.E. 2d 917 (1972); *State v. Primes, supra.*

The crime of rape was divided into two degrees by the 1973 amendment to G.S. 14-21, which provides that second degree rape shall be a lesser included offense of first degree rape. The statute says:

> "*Rape; punishment in the first and second degree.* — Every person who ravishes and carnally knows any female of the age of 12 years or more by force and against her will, or who unlawfully and carnally knows and abuses any female child under the age of 12 years, shall be guilty of rape, and upon conviction, shall be punished as follows:

> (a) First-Degree Rape —

>> (1) If the person guilty of rape is more than 16 years of age, and the rape victim is a virtuous female child under the age of 12 years, the punishment shall be death; or

>> (2) If the person guilty of rape is more than 16 years of age, and the rape victim had her resistance overcome or her submission procured by the use of a deadly weapon, or by the infliction of serious bodily injury to her, the punishment shall be death.

> (b) Second-Degree Rape — Any other offense of rape defined in this section shall be a lesser-included offense of rape in the first degree and shall be punished by imprisonment in the State's prison for life, or for a term of years, in the discretion of the court."

*See State v. Goss*, 293 N.C. 147, 235 S.E. 2d 844 (1977).

[1] Defendant argues that, according to the victim's testimony, no physical force was ever directly used against her, and, secondly, that the victim offered no resistance to defendant's advances.

The victim testified that defendant grabbed her around the neck and choked her. He held her neck while he backed her through the living room, kitchen, and into the bedroom. On cross-examination, the victim said: "When I fell down on the bed, his hand stayed on my neck. I passed out; I couldn't get my breath;

and he was choking me; and it was cutting my wind off. I was scared to death." This testimony was sufficient evidence of the force used against the victim.

Defendant further contends that, other than asserting, "I don't want you to do this" several times, the victim offered no additional resistance to defendant's advances. However, not only did the victim say several times, "I don't want you to do this," but she also cried and screamed when defendant's desires became clear to her. In addition, defendant exerted physical force against her from the moment she attempted to escape via the front door. The victim said on direct examination: "I didn't ever try to fight Tracy; I just lay there and looked at the ceiling. I didn't fight him because I was afraid of him"; and, "I passed out because I guess I was just scared to death and I was hurting too. . . . I was just scared and I don't remember."

It is true that the victim offered no physical resistance to defendant's attack. However, evidence of physical resistance is not necessary to prove lack of consent in a rape case. In *State v. Primes*, 275 N.C. 61, 67, 165 S.E. 2d 225, 229 (1969), where a defendant made similar contentions, this Court said: "While consent by the female is a complete defense, consent which is induced by fear of violence is void and is no legal consent. [Citation omitted.]" And in *State v. Carter*, 265 N.C. 626, 144 S.E. 2d 826 (1965), the Court, quoting 1 Wharton's Criminal Law and Procedure (Anderson Ed. 1957), § 311, p. 649, said: "A consent obtained by use of force or fear due to threats of force is void, and the offense then rape." In both *Primes* and *Carter* the Court quoted with approval the following language from 44 Am. Jur., Rape, § 13, p. 910:

> "Consent of the woman from fear of personal violence is void. Even though a man lays no hand on a woman, yet if by an array of physical force he so overpowers her mind that she dares not resist, or she ceases resistance through fear of great harm, the consummation of unlawful intercourse by the man is rape. . . ."

*See also State v. Williams*, 275 N.C. 77, 165 S.E. 2d 481 (1969).

In present case, the victim testified that she had intercourse with defendant against her will. She said that she repeatedly told him that she did not want to have intercourse. When he advanced toward her she screamed and began crying. She testified that

defendant grabbed her around the neck and choked her, and that this caused her to lose consciousness. Though defendant made no verbal threats to her, and though she offered no physical resistance, this is ample evidence to support the State's contention that the defendant had carnal knowledge of her by force and against her will. Hence, there was sufficient evidence to support the trial court's denial of the motion for nonsuit.

[2] In his charge to the jury, the trial judge submitted the possible verdicts of second degree rape, assault with intent to commit rape, assault on a female and not guilty. Defendant's second assignment of error is based on the contention that the trial court erred in submitting to the jury the lesser offenses included within the charge of rape. He argues that all the State's evidence showed a completed act of intercourse, and thus that the only issues which should have been submitted to the jury were whether defendant was guilty of second degree rape or not guilty.

In *State v. Armstrong*, 287 N.C. 60, 65, 212 S.E. 2d 894, 897-98 (1975), a factually similar case, Justice Huskins, speaking for the Court, said:

"It should be noted that all of the evidence in this case reveals a completed act of sexual intercourse. The only dispute between the State and the defendant is whether the act was accomplished by consent or by force. Under those circumstances there was no necessity to submit the lesser included offenses of assault with intent to commit rape and assault on a female. Lesser included offenses must be submitted only when there is evidence to support them. *State v. Watson*, 283 N.C. 383, 196 S.E. 2d 212 (1973); *State v. Bryant*, 280 N.C. 551, 187 S.E. 2d 111 (1972). *Submission of the lesser included offenses, however, was error favorable to the defendant and affords him no grounds for relief.*" (Emphasis added.)

*Accord, State v. Jones*, 287 N.C. 84, 214 S.E. 2d 24 (1975); *State v. Accor* and *State v. Moore*, 281 N.C. 287, 188 S.E. 2d 332 (1972); *State v. Rogers*, 273 N.C. 208, 159 S.E. 2d 525 (1968). This assignment of error is overruled.

We have carefully examined the entire record and conclude that defendant received a fair trial, free from prejudicial error. The trial, verdict, and judgment must therefore be upheld.

No error.