STATE OF NORTH CAROLINA v. TIMOTHY EMORY

No. 7814SC928

(Filed 20 March 1979)

1. **Homicide § 19.1— acts and threats of violence after shooting—no evidence of deceased's character**

    The trial court in a murder case did not err in excluding evidence of acts and threats of violence against defendant and his family after the shooting of the deceased as evidence of the character of the deceased as a violent and dangerous fighting man, since such evidence was not relevant to establish the character of deceased, as he clearly could not have perpetrated the acts or threats in question.

2. **Homicide § 19.1— suspicious males in defendant's neighborhood—no evidence of deceased's character**

    The trial court in a murder case properly excluded testimony by an officer that he stopped two suspicious looking males in the vicinity of defendant's home one or one and one-half hours after the shooting incident giving rise to the crime charged, that the men admitted being present at the crime scene, and that the officer found a fully loaded shotgun and rifle in the men's car, since the victim was not in the automobile when it was stopped; no evidence was introduced to indicate that he was in any way connected with the actions of the two men stopped by the officer; and such evidence did not reflect upon the character of deceased or tend to establish that defendant shot deceased in self-defense.

3. **Homicide § 21.9— manslaughter—sufficiency of evidence**

    Evidence was sufficient to show that the crime of voluntary manslaughter was committed and that defendant was the perpetrator of that crime.

APPEAL by defendant from *Martin (John C.), Judge*. Judgment entered 27 February 1978 in Superior Court, DURHAM County. Heard in the Court of Appeals 18 January 1979.

The defendant was indicted for the second degree murder of one Johnny Carlton. Upon his plea of not guilty, the jury returned a verdict of guilty of voluntary manslaughter. From judgment sentencing him to imprisonment for a term of six years as a committed youthful offender, the defendant appealed.

The State's evidence tended to show that during the evening of 2 September 1976 the defendant was playing pool in an amusement center located on Ellis Road in Durham County and owned by Rex Herndon. At approximately 11:30 p.m. on that date, the defendant became involved in an altercation with one Tommy Williams. When Herndon attempted to separate the two men, others joined in creating a general affray. Order was soon restored and the defendant left the amusement center.

Approximately two and a half hours later, the defendant was seen standing beside his car which was parked in the parking lot of a tavern on Angier Avenue in Durham County. The defendant was holding a .22 caliber rifle at that time. One John Bonamo walked up to the defendant who then shot Bonamo in the knee. Johnny Carlton was then seen standing in the parking lot reaching into his back pocket. The defendant began shooting his rifle in several directions at that time. After the shooting stopped, it was determined that four people including Johnny Carlton had been shot. Carlton was then taken to a hospital where he later died.

A bullet was recovered from the body of Johnny Carlton. It was examined by an agent of the State Bureau of Investigation and found to be a .22 caliber bullet. The bullet was so damaged, however, that no determination could be made as to whether it had been fired from the defendant's rifle.

The State also presented evidence that a .38 caliber derringer was found at the scene of the shooting. The victim's wife testified that the derringer belonged to her husband. The two-shot derringer contained one live round of ammunition and one spent shell at the time it was found.

The defendant presented evidence tending to show that Tommy Williams made threats against the defendant and his family at the time of the altercation in the amusement center. The defendant returned to his home after the fight and told his father what

had happened. His father suggested that the defendant should find the people who had been involved and resolve the controversy. The defendant then got his .22 rifle and went to find the people who had participated in the affray. The defendant's father and mother followed him in another car. When they arrived at the tavern, they found several people standing in the parking lot. John Bonamo approached the defendant and said, "You ain't learned your lesson yet, have you, buddy? I got one for you now." Bonamo pulled a gun on the defendant who then shot Bonamo in the leg. Someone to the right of the defendant shot at him and the defendant returned the fire. Others started to shoot at the defendant and he returned their fire. The defendant testified that during this incident the victim, Johnny Carlton, shot at him several times. The defendant further testified that Carlton was about to shoot him at the time he shot Carlton. After shooting Carlton, the defendant ran to his father's car and they drove away as the shooting continued.

*Attorney General Edmisten, by Assistant Attorney General Donald W. Stephens, for the State.*

*Arthur Vann for defendant appellant.*

MITCHELL, Judge.

[1] The defendant first assigns as error the exclusion of evidence relating to certain events occurring after the shooting which resulted in the death of Johnny Carlton. As his defense was based upon the theory of self-defense, the defendant contends that this evidence was admissible as tending to show the character of the deceased as a violent and dangerous fighting man. We do not agree.

During the direct examination of the defendant, he attempted to introduce evidence that a bomb exploded in his car on 17 January 1977 and other evidence tending to show acts or threatened acts of violence against him or his family after the shooting of the deceased. The trial court conducted a voir dire hearing and specifically ruled that evidence tending to show threats or acts of violence against the defendant or his family occurring after the death of the deceased victim in this case were excluded as irrelevant. We find that the trial court ruled correctly in this regard.

The defendant apparently offered evidence tending to show acts and threats of violence against him and his family as evidence of the character of the deceased as a violent and dangerous fighting man. Such evidence is not relevant unless an issue of self-defense or some similar justification is to be resolved by the jury. Where, as here, self-defense is an issue, the violent character of the *deceased* may be relevant if known to the accused *at the time of the crime charged* or if, whether known to him or not, it throws light upon the question of which party was the actual aggressor. 1 Stansbury's N.C. Evidence § 106, p. 330 (Brandis rev. 1973). In the present case, however, the defendant sought to introduce evidence of violent acts and threats of violence occurring after the shooting of the deceased which resulted in his death. Such evidence was not relevant to establish the character of the *deceased* as he clearly could not have perpetrated the acts or threats in question. Additionally, no evidence was introduced tending to show any connection between the deceased and the individuals making the alleged threats and committing the alleged acts of violence. Evidence of the alleged acts and threats was, therefore, properly excluded and the assignment of error is overruled.

[2] The defendant next contends that the trial court erred in excluding the testimony of H. S. Turnage, a City of Durham Public Safety Officer. Officer Turnage testified on voir dire that he was driving his patrol car in the vicinity of the defendant's home about an hour or an hour and a half after the shooting incident. He observed two suspicious males on that occasion. Upon being stopped and questioned about the shooting incident, they indicated that they had been at the tavern at the time of the shooting incident but had not done any of the shooting. The officer then looked into their car and found a fully loaded shotgun and rifle.

This testimony by Officer Turnage was also properly excluded as irrelevant. The victim was not in the automobile when it was stopped and no evidence was introduced to indicate that he was in any way connected with the actions of the two males stopped by Officer Turnage. Such evidence did not reflect upon the character of the deceased or tend to establish that the defendant shot the deceased in self-defense. The testimony was properly excluded and the assignment is overruled.

[3] The defendant also contends that the trial court erred in denying his motion for dismissal made at the close of all of the evidence. In considering such a motion, the trial court must determine whether there is substantial evidence of each element of the crime charged or a lesser included offense and that the defendant is the person who committed the crime. *See State v. Hall*, 293 N.C. 559, 238 S.E. 2d 473 (1977). In determining whether such evidence has been presented, all of the evidence must be considered in the light most favorable to the State and the State must be given the benefit of every reasonable inference that may be drawn therefrom. *See State v. Thomas*, 296 N.C. 236, 250 S.E. 2d 204 (1978).

The defendant in the present case stipulated that the deceased victim died as a result of a .22 caliber gunshot wound and the stipulation was introduced into evidence. On direct examination, the defendant testified that he shot at the deceased. On cross-examination, the defendant made the following statement concerning the deceased: "I guess I shot him once and hit him." When considered in the light most favorable to the State, such evidence was sufficient to show that the crime of voluntary manslaughter was committed and that the defendant was the perpetrator of that crime. Therefore, the trial court did not err in denying the defendant's motion to dismiss.

The defendant received a fair trial free from prejudicial error and we find

No error.

Judges MARTIN (Robert M.) and ERWIN concur.