STATE OF NORTH CAROLINA *v.* EDWARD ALSTON

No. 246A83

(Filed 6 March 1984)

**1. Kidnapping § 1.2— sufficiency of evidence**

The evidence in a prosecution for first degree kidnapping was insufficient to withstand defendant's motion to dismiss at the close of the evidence where the evidence introduced at trial provided substantial evidence of force, intimidation and removal of the victim by the defendant, but the evidence was insufficient to show that the defendant removed her with the intent to commit rape. The evidence tended to show that defendant approached the victim at her school, defendant blocked her way and grabbed her arm, forcing her to walk with him towards the parking lot; defendant questioned her about where she was living and expressed a desire to see her again; there was no evidence that while he held her he had an intent to have sex with her; he made no sexual remarks but expressed a desire to talk about the relationship; the two then embarked on a walk through the neighborhood; the defendant and the victim continued on their walk, staying slightly apart, with the defendant neither holding the victim nor threatening her in any way with what might happen if she tried to leave; defendant made no sexual remarks at all until they reached a wooded area some distance from the school and stopped to talk; there the victim told the defendant that the relationship was over; for the first time defendant spoke of sex and said he deserved another lovemaking session; they changed directions at that point; and the victim said nothing but followed defendant to the house where the two had gone to have sex before. G.S. 14-39(a), (b). All the evidence tended to show that, after the victim told the defendant their relationship was over and he made his statement concerning sex, the defendant did not threaten the victim in any way and did not touch her again until he actually had sex with her at a friend's house. Instead, all the evidence tends to show that the victim followed the defendant to the friend's house without protesting or giving any apparent indication that she went unwillingly. Such evidence was insufficient to show that the defendant knew or had any reason to know at the time he removed the victim from the school that she would not have consensual sexual intercourse with him as she always had in the past.

**2. Rape and Allied Offenses § 5— sufficiency of evidence of second degree rape**

In a prosecution for second degree rape, the evidence was insufficient to allow the trial court to submit the issue to the jury where the record was devoid of any evidence that the victim was in any way intimidated into having sexual intercourse with the defendant by threat or any other act of the defendant. The victim specifically stated that her fear of the defendant was based on an experience with him prior to the date of the alleged rape and that on that date he did not hold her down or threaten her with what would happen if she refused to submit to him. Although the victim's general fear of the defendant may have been justified by his conduct on prior occasions, absent evidence that the defendant used force or threats to overcome the will of the victim *to*

*resist the sexual intercourse alleged to have been rape,* such general fear was not sufficient to show that the defendant used the force required to support a conviction of rape. The State's evidence was sufficient to show that the act of sexual intercourse in question was against the victim's will, but insufficient to show that the act was accomplished by actual force or by a threat to use force unless she submitted.

APPEAL by the defendant pursuant to G.S. 7A-30(2) from the decision of a divided panel of the Court of Appeals which upheld judgments entered by *Brannon, Judge* on January 12, 1982 in Superior Court, DURHAM County. Heard in the Supreme Court October 5, 1983.

The defendant was charged in bills of indictment with second degree rape and first degree kidnapping. The defendant pleaded not guilty and was convicted by a jury on January 8, 1982 of both charges. He was sentenced to a maximum prison term of ten years and a minimum term of eight years for second degree rape. He received a sentence of 25 years on the first degree kidnapping conviction, which sentence was suspended for five years. The Court of Appeals affirmed both convictions.

*Rufus L. Edmisten, Attorney General, by Lucien Capone III, Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, by Nora B. Henry, Assistant Appellate Defender, for the defendant appellant.*

MITCHELL, Justice.

The defendant raises on appeal the question whether the evidence of his guilt of kidnapping and second degree rape was sufficient to support his convictions of those crimes. For reasons discussed herein, we conclude the evidence was insufficient to support his conviction of either crime.

The State's evidence tended to show that at the time the incident occurred the defendant and the prosecuting witness in this case, Cottie Brown, had been involved for approximately six months in a consensual sexual relationship. During the six months the two had conflicts at times and Brown would leave the apartment she shared with the defendant to stay with her mother. She testified that she would return to the defendant and the apartment they shared when he called to tell her to return. Brown

testified that she and the defendant had sexual relations throughout their relationship. Although she sometimes enjoyed their sexual relations, she often had sex with the defendant just to accommodate him. On those occasions, she would stand still and remain entirely passive while the defendant undressed her and had intercourse with her.

Brown testified that at times their consensual sexual relations involved some violence. The defendant had struck her several times throughout the relationship when she refused to give him money or refused to do what he wanted. Around May 15, 1981, the defendant struck her after asking for money that she refused to give him. Brown left the apartment she shared with the defendant and moved in with her mother. She did not have intercourse with the defendant after May 15 until the alleged rape on June 15. After Brown left the defendant, he called her several times and visited her at Durham Technical Institute where she was enrolled in classes. When he visited her they talked about their relationship. Brown testified that she did not tell him she wanted to break off their relationship because she was afraid he would be angry.

On June 15, 1981, Brown arrived at Durham Technical Institute by taxicab to find the defendant standing close to the school door. The defendant blocked her path as she walked toward the door and asked her where she had moved. Brown refused to tell him, and the defendant grabbed her arm, saying that she was going with him. Brown testified that it would have taken some effort to pull away. The two walked toward the parking lot and Brown told the defendant she would walk with him if he let her go. The defendant then released her. She testified that she did not run away from him because she was afraid of him. She stated that other students were nearby.

Brown stated that she and the defendant then began a casually paced walk in the neighborhood around the school. They walked, sometimes side by side, sometimes with Brown slightly behind the defendant. As they walked they talked about their relationship. Brown said the defendant did not hold her or help her along in any way as they walked. The defendant talked about Brown's "dogging" him and making him seem a fool and about Brown's mother's interference in the relationship. When the

defendant and Brown left the parking lot, the defendant threatened to "fix" her face so that her mother could see he was not playing. While they were walking out of the parking lot, Brown told the defendant she wanted to go to class. He replied that she was going to miss class that day.

The two continued to walk away from the school. Brown testified that the defendant continually talked about their relationship as they walked, but that she paid little attention to what he said because she was preoccupied with her own thoughts. They passed several people. They walked along several streets and went down a path close to a wooded area where they stopped to talk. The defendant asked again where Brown had moved. She asked him whether he would let her go if she told him her address. The defendant then asked whether the relationship was over and Brown told him it was. He then said that since everyone could see her but him he had a right to make love to her again. Brown said nothing.

The two turned around at that point and began walking towards a street they had walked down previously. Changing directions, they walked in the same fashion they had walked before—side by side with Brown sometimes slightly behind. The defendant did not hold or touch Brown as they walked. Brown testified that the defendant did not say where they were going but that, when he said he wanted to make love, she knew he was going to the house of a friend. She said they had gone to the house on prior occasions to have sex. The defendant and Brown passed the same group of men they had passed previously. Brown did not ask for assistance because some of the men were friends of the defendant, and she assumed they would not help. The defendant and Brown continued to walk to the house of one of the defendant's friends, Lawrence Taylor.

When they entered the house, Taylor was inside. Brown sat in the living room while the defendant and Taylor went to the back of the house and talked. When asked why she did not try to leave when the defendant and Taylor were in the back of the house, Brown replied, "It was nowhere to go. I don't know. I just didn't." The defendant returned to the living room area and turned on the television. He attempted to fix a broken fan. Brown asked Taylor for a cigarette, and he gave her one.

The defendant began talking to Brown about another man she had been seeing. By that time Taylor had gone out of the room and perhaps the house. The defendant asked if Brown was "ready." The evidence tended to show that she told him "no, that I wasn't going to bed with him." She testified that she did not want to have sex with the defendant and did not consent to do so at any time on June 15.

After Brown finished her cigarette, the defendant began kissing her neck. He pulled her up from the chair in which she had been sitting and started undressing her. He noticed that she was having her menstrual period, and she sat down pulling her pants back up. The defendant again took off her pants and blouse. He told her to lay down on a bed which was in the living room. She complied and the defendant pushed apart her legs and had sexual intercourse with her. Brown testified that she did not try to push him away. She cried during the intercourse. Afterwards they talked. The defendant told her he wanted to make sure she was not lying about where she lived and that he would not let her up unless she told him.

After they dressed they talked again about the man Brown had been seeing. They left the house and went to the defendant's mother's house. After talking with the defendant's mother, Brown took a bus home. She talked with her mother about taking out a complaint against the defendant but did not tell her mother she and the defendant had had sex. Brown made a complaint to the police the same day.

The defendant continued to call Brown after June 15, but she refused to see him. One evening he called from a telephone booth and told her he had to talk. When he got to her apartment he threatened to kick her door down and Brown let him inside. Once inside he said he had intended merely to talk to her but that he wanted to make love again after seeing her. Brown said she sat and looked at him, and that he began kissing her. She pulled away and he picked her up and carried her to the bedroom. He performed oral sex on her and she testified that she did not try to fight him off because she found she enjoyed it. The two stayed together until morning and had sexual intercourse several times that night. Brown did not disclose the incident to the police immediately because she said she was embarrassed.

The defendant put on no evidence and moved at the close of the State's evidence for dismissal of both charges based on insufficiency of evidence. The trial court denied the motions and the majority in the Court of Appeals affirmed the trial court.

Upon the defendant's motion to dismiss, the question for the court is whether substantial evidence was introduced of each element of the offense charged and that the defendant was the perpetrator. *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E. 2d 164, 169 (1980). The issue of substantiality is a question of law for the court. If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the perpetrator, the motion to dismiss should be allowed. *State v. Cutler*, 271 N.C. 379, 383, 156 S.E. 2d 679, 682 (1967). This is true even though the suspicion is strong. *State v. Evans*, 279 N.C. 447, 183 S.E. 2d 540 (1971).

The court is to consider the evidence in the light most favorable to the State in ruling on a motion to dismiss. *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982). The State is entitled to every reasonable intendment and inference to be drawn from the evidence; contradictions and discrepancies do not warrant dismissal—they are for the jury to resolve. *Id.*

[1] In light of these principles, we examine first the evidence relating to the charge of kidnapping. Kidnapping is the unlawful restraint, confinement or removal of a person without that person's consent, if the person is 16 or over, for one of the following purposes:

(1) Holding such other person for ransom or as a hostage or using such other person as a shield; or

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person.

(4) Holding such other person in involuntary servitude in violation of G.S. 14-43.2.

G.S. 14-39(a). In order to convict the defendant of first degree kidnapping, the State must allege and prove as an additional element that "the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted. . . ." G.S. 14-39(b); *State v. Jerrett,* 309 N.C. 239, 307 S.E. 2d 339 (1983).

The indictment for kidnapping in the present case alleged that the defendant removed Brown for the purpose of facilitating the commission of the felony of second degree rape. When such an indictment alleges an intent to commit a particular felony, the State must prove the particular intent alleged. *State v. White,* 307 N.C. 42, 296 S.E. 2d 267 (1982). In order to withstand the defendant's motion to dismiss, the State was, therefore, required to introduce substantial evidence tending to show that the defendant had the intent to rape Brown at the time he removed her.

The defendant argues that no substantial evidence was introduced tending to show either that he forcibly removed Brown or that he had the intent to rape her when he did so. Our review of the evidence introduced at trial leads us to the conclusion that, although there was substantial evidence of force, intimidation and removal of Brown by the defendant, the evidence was insufficient to show that the defendant removed her with the intent to commit rape.

The evidence tended to show that when he approached Brown at the school on June 15, the defendant blocked her way and grabbed her arm, forcing her to walk with him towards the parking lot. He questioned her about where she was living and expressed a desire to see her again. There was no evidence that while he held her he had an intent to have sex with her. He made no sexual remarks but expressed a desire to talk about their relationship. The two then embarked on a walk through the neighborhood. The defendant and Brown continued on their walk, staying slightly apart, with the defendant neither holding Brown nor threatening her in any way with what might happen if she tried to leave. They talked about their relationship as they walked.

The defendant made no sexual remarks at all until they reached a wooded area some distance from the school and stopped to talk. There Brown told the defendant that the relationship was

over. For the first time the defendant spoke of sex and said he deserved another lovemaking session. They changed directions at that point. Brown said nothing but followed him to the house where the two had gone to have sex before.

There was no substantial evidence of an intent by the defendant to have sex until the time he made his statement about deserving sex. Ordinarily, the mere fact that a defendant removed and then raped the victim is substantial evidence that the defendant removed the victim with the intent to commit rape. *See State v. White*, 307 N.C. 42, 49, 296 S.E. 2d 267, 271 (1982) (removal to facilitate sexual assault). Even when it is assumed *arguendo* that the defendant in this case raped Brown, however, all of the evidence tended to show that, at the time the defendant removed Brown, he had no reason to think that she would not engage in consensual sexual acts with him. To the contrary, all of the evidence tended to show that Brown's actions on June 15 prior to telling the defendant that their relationship was at an end were entirely consistent with the well established pattern of the couple's consensual sexual relationship. During that relationship she frequently remained entirely passive while the defendant at times engaged in some violence at the time of sexual intercourse. Brown's conduct on June 15, at least prior to her telling the defendant the relationship was over, was entirely consistent with her prior consensual sexual conduct. It in no way indicated to the defendant that he would have to rape Brown in order to have sexual intercourse with her. Therefore, there was no substantial evidence that the defendant had formed the intent to rape Brown at the time he forcibly removed her or that he removed her with the intent to facilitate any such crime.

All of the evidence tended to show that, after Brown told the defendant their relationship was over and he made his statement concerning sex, the defendant did not threaten Brown in any way and did not touch her again until he actually had sex with her at the Taylor house. Instead, all of the evidence tends to show that Brown followed the defendant to the Taylor house without protesting or giving any apparent indication that she went unwillingly. We think that such evidence was insufficient to show that the defendant knew or had any reason to know at the time he removed Brown from the school that she would not have consensual sexual intercourse with him as she always had in the past. Thus,

there was no substantial evidence that the defendant had formed an intent to rape Brown at the time he removed her from the school.

Since there was no substantial evidence of forcible confinement, restraint or removal for the purpose of committing rape, the State failed to present substantial evidence of every element of the offense charged in the bill of indictment. We reverse the majority holding of the Court of Appeals on this issue and hold that the trial court erred in denying the defendant's motion to dismiss the kidnapping charge for insufficiency of the evidence.

[2] In his second assignment of error the defendant contends there was no substantial evidence that the sexual intercourse between Brown and him was by force and against her will. He argues that the evidence was insufficient to allow the trial court to submit the issue of his guilt of second degree rape to the jury. After a review of the evidence, we find this argument to have merit.

Second degree rape involves vaginal intercourse with the victim both by force and against the victim's will. G.S. 14-27.3. Consent by the victim is a complete defense, but consent which is induced by fear of violence is void and is no legal consent. *State v. Hall*, 293 N.C. 559, 563, 238 S.E. 2d 473, 476 (1977).

A defendant can be guilty of raping even his mistress or a "common strumpet." *Cf. State v. Long*, 93 N.C. 542 (1885) (assault with intent to rape). This is so because consent to sexual intercourse freely given can be withdrawn at any time prior to penetration. *State v. Way*, 297 N.C. 293, 296, 254 S.E. 2d 760, 761 (1979). If the particular act of intercourse for which the defendant is charged was both by force and against the victim's will, the offense is rape without regard to the victim's consent given to the defendant for prior acts of intercourse. *Id.*; R. Anderson, 1 Wharton's Criminal Law and Procedure § 302 (1957).

Where as here the victim has engaged in a prior continuing consensual sexual relationship with the defendant, however, determining the victim's state of mind at the time of the alleged rape obviously is made more difficult. Although inquiry in such cases still must be made into the victim's state of mind at the time of the alleged rape, the State ordinarily will be able to show

the victim's lack of consent to the specific act charged only by evidence of statements or actions by the victim which were clearly communicated to the defendant and which expressly and unequivocally indicated the victim's withdrawal of any prior consent and lack of consent to the particular act of intercourse.

In the present case the State introduced such evidence. It is true, of course, that Brown gave no physical resistance to the defendant. Evidence of physical resistance is not necessary to prove lack of consent in a rape case in this jurisdiction. *State v. Hall*, 293 N.C. 559, 563, 238 S.E. 2d 473, 476 (1977). Brown testified unequivocally that she did not consent to sexual intercourse with the defendant on June 15. She was equally unequivocal in testifying that she submitted to sexual intercourse with the defendant only because she was afraid of him. During their walk, she told the defendant that their relationship was at an end. When the defendant asked her if she was "ready" immediately prior to having sexual intercourse with her, she told him "no, that I wasn't going to bed with him." Even in the absence of physical resistance by Brown, such testimony by her provided substantial evidence that the act of sexual intercourse was against her will. *See, e.g., State v. Arnold*, 284 N.C. 41, 199 S.E. 2d 423 (1973).

The State did not offer substantial evidence, however, of the element of force. As we have stated, actual physical force need not be shown in order to establish force sufficient to constitute an element of the crime of rape. Threats of serious bodily harm which reasonably induce fear thereof are sufficient. *See State v. Burns*, 287 N.C. 102, 214 S.E. 2d 56, *cert. denied*, 428 U.S. 933 (1975). In the present case there was no substantial evidence of either actual or constructive force.

The evidence in the present case tended to show that, shortly after the defendant met Brown at the school, they walked out of the parking lot with the defendant in front. He stopped and told Brown he was going to "fix" her face so that her mother could see he was not "playing." This threat by the defendant and his act of grabbing Brown by the arm at the school, although they may have induced fear, appeared to have been unrelated to the act of sexual intercourse between Brown and the defendant. More important, the record is devoid of evidence that Brown was in any way intimidated into having sexual intercourse with the de-

fendant by that threat or any other act of the defendant on June 15. Brown said she did not pay a lot of attention to what the defendant said because she was thinking about other things. She specifically stated that her fear of the defendant was based on an experience with him prior to June 15 and that on June 15 he did not hold her down or threaten her with what would happen if she refused to submit to him. The State failed to offer substantial evidence of force used or threatened by the defendant on June 15 which related to his desire to have sexual intercourse on that date and was sufficient to overcome the will of the victim.

We note that the absence of an explicit threat is not determinative in considering whether there was sufficient force in whatever form to overcome the will of the victim. It is enough if the totality of the circumstances gives rise to a reasonable inference that the unspoken purpose of the threat was to force the victim to submit to unwanted sexual intercourse. *State v. Barnette*, 304 N.C. 447, 284 S.E. 2d 298 (1981). The evidence introduced in the present case, however, gave rise to no such inference. Under the peculiar facts of this case, there was no substantial evidence that threats or force by the defendant on June 15 were sufficiently related to sexual conduct to cause Brown to believe that she had to submit to sexual intercourse with him or suffer harm. Although Brown's general fear of the defendant may have been justified by his conduct on prior occasions, absent evidence that the defendant used force or threats to overcome the will of the victim *to resist the sexual intercourse alleged to have been rape,* such general fear was not sufficient to show that the defendant used the force required to support a conviction of rape.

In summary, we think that the State's evidence was sufficient to show that the act of sexual intercourse in question was against Brown's will. It was not sufficient, however, to show that the act was accomplished by actual force or by a threat to use force unless she submitted to sexual intercourse. Since the State did not introduce substantial evidence of the element of force required to sustain a conviction of rape, the trial court erred in denying the defendant's motion to dismiss the case against the defendant for second degree rape.

For the foregoing reasons, we reverse the opinion of the Court of Appeals holding that there was no error in the defend-

ant's trial for kidnapping and second degree rape and remand this action to the Court of Appeals for its further remand to the Superior Court, Durham County, for the entry of directed verdicts in favor of the defendant.

Case No. 81CRS14691—Second degree rape—reversed and remanded.

Case No. 81CRS29047—First degree kidnapping—reversed and remanded.