STATE OF NORTH CAROLINA v. CHARLES LEE SCOTT

No. 8728SC1007

(Filed 19 April 1988)

**Rape and Allied Offenses § 5— second degree rape—sexual act accomplished by force—insufficiency of evidence**

The trial court erred in denying defendant's motions to dismiss a charge of second degree rape where the evidence was sufficient to disclose that defendant had sexual intercourse with a sixteen-year-old female against her will, but it was insufficient to show that the sexual act was accomplished "by force" as required by N.C.G.S. § 14-27.3(a)(1).

Judge WELLS dissenting.

APPEAL by defendant from Lewis (Robert D.), Judge. Judgment entered 6 April 1987 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 11 April 1988.

Defendant was charged in a proper bill of indictment with the second-degree rape of a sixteen-year-old female in violation of G.S. 14-27.3(a)(1).

The evidence considered in the light most favorable to the State tends to show the following: On the morning of 18 September 1986 the victim, a sixteen-year-old girl, spoke with defendant, her neighbor, on the telephone several times about buying a car. The victim also asked defendant if he would pick up a pack of cigarettes for her if he was out that day, and she told him she would repay him. Defendant told her he would.

Later that morning defendant called the victim and told her that he had run out of gas. He asked her to get the owner of the trailer park, where both defendant and the victim lived, to bring him some gas. After conveying that message the victim returned to the trailer where she lived with her mother and brother. Her mother had gone to work, and her brother had gone to school. The victim began washing dishes. Defendant entered the victim's mobile home through an unlocked door and gave the victim a pack of cigarettes. The victim told him her mother had left her a dollar to pay for the cigarettes but defendant told her that it was not necessary for her to pay him. The victim thanked him for the cigarettes, and after talking with him for a while, told him that she needed to finish the dishes and clean the house before leaving for school. Defendant approached the victim and "pinned" her against the kitchen sink. When the victim asked defendant to leave he told her that "it would just take a minute." The victim told him that she really needed to get back to what she was do-ing, that she didn't have time for this, and that he really needed to go on home because she was extremely busy. Defendant put his hands on the victim's sides and back and began moving his hips against her. The victim kept repeating her requests for him to leave her alone and to go away. The victim pushed at defend-ant, but he would not let go. Defendant then started "angling" the victim toward the back of the trailer. Thinking there was no way to get out of the trailer through the front or the back, the victim backed down the hallway and stumbled into the bathroom. De-fendant followed her into the bathroom and began kissing her neck and unbuttoning her blouse. The victim told him to leave her clothes alone and to get out of her house. Defendant unbuttoned the victim's pants and lifted her up onto the bathroom sink. The victim got off, and defendant lifted her back up on the sink. When she slid down again defendant lifted her back up onto the sink. Defendant then unzipped and removed his pants. Defendant pulled down the victim's underwear, ignoring her pleas to leave her alone. When the victim told defendant that "this wasn't going to do . . . [b]ecause I'm on my period," defendant removed her tampon. Defendant attempted to penetrate the victim's vagina with his penis but was unsuccessful. At this point the victim thought about "picking up the hair spray bottle and beating him to death with it," but she did not pick up the bottle. After placing Vaseline on his penis, defendant succeeded in penetrating the vic-

tim's vagina. After having sexual intercourse defendant left, tell-ing the victim she "dare not" tell her mother or defendant's wife what he had done. After defendant left, the victim began to cry. She then called the Rape Crisis Center and reported the incident.

Defendant was found guilty as charged and appealed from a judgment imposing a prison sentence of 12 years.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General D. David Steinbock, for the State.*

*Assistant Appellate Defender David W. Dorey for defendant, appellant.*

HEDRICK, Chief Judge.

Defendant assigns error to the denial of his timely "motions to dismiss" made at the conclusion of the State's evidence and at the conclusion of defendant's evidence. The record discloses that at the close of the State's evidence when defendant made a mo-tion to dismiss, the following colloquy took place between the judge and the assistant district attorney:

COURT: What does the State say to the essential element the defendant used force sufficient to over come [sic] any resistance the victim might make?

MR. CLARK: Your Honor, the State would have a copy of a summary of *State vs. Strickland*, 318 North Carolina Supreme Court from the Advance Sheet, Pages 656 and 657 that I will review, and I have a copy, if you wish to see that.

COURT: All right.

MR. CLARK: The State's position would be that certainly more showing being made than that of constructive force, which Your Honor is aware in the law as to what construc-tive force is. My recollection of the evidence was that the de-fendant in this case did place his hands and body upon the victim, that she verbally and physically resisted that, verbal-ly by telling him to leave, to not continue; that, physically, she testified at one point, again from my recollection, that she pushed him away; that at another time within the bathroom area, that her recollection was that she thought that she had slapped at him with her hands.

COURT: Well, in this case you've given me, for example, he refused to leave the premises, broke the latch from behind, put his hand over her mouth. "He pulled me into the bedroom, pulled me by the arm. Did you scream or holler? No, I was so scared of what would happen. Did he have hold of you at the time? Yes, sir. What happened when he pushed you on the bed? He pulled my pants off and had sex. Did he have power over you the entire time? Yes, sir."

That's quite a whole bushel basket full of evidence different from what you have here. There is no evidence of any scared or frightened. She never testified that she was in fear. The only thing he did was put her on the sink every time she got off.

MR. CLARK: Well, I would have to review all my notes, Your Honor, but she was—she considered striking him with a hairspray bottle that was there on the sink; that the defendant tugged on clothing that she was wearing and did stretch, as Your Honor has seen, the items in evidence, that the button has been stretched. Taking the evidence in the light most favorable to the State, that she did strike at him while she was in the bathroom by smaking [sic] at his hand, but she did, in fact, at the outset of the assault fight back by pushing at him, and he would not let go.

COURT: There's no evidence that he ever had hold of her.

MR. CLARK: Your Honor, the evidence—

COURT: I'll submit it to the jury, but it will never last in Raleigh, if it gets by the 12. If you want it to go to the jury that will be fine, but it will never last.

. . .

In his brief defendant cites *State v. Alston*, 310 N.C. 399, 312 S.E. 2d 470 (1984) in support of his contention that the evidence in the present case fails to disclose either actual or constructive force. In *Alston* the Court held that the victim's "general fear" of the defendant was not sufficient to show that the defendant used the force required to support a rape conviction, absent evidence that the defendant used force or threats to overcome the will of

the victim to resist the sexual intercourse alleged to have been rape. In *State v. Strickland*, 318 N.C. 653, 351 S.E. 2d 281 (1987), the North Carolina Supreme Court distinguished the facts in that case from the facts in *Alston*. In *Strickland*, the State presented evidence that the defendant used both actual and constructive force in that the defendant refused to leave the victim's premises, broke the latch off her screen door, forced his way into her home, grabbed the victim from behind, and put his hand over her mouth before pulling her into the bedroom and raping her.

In our opinion the trial judge's statement with respect to *Strickland* and the sufficiency of the evidence in the present case "[t]hat's quite a whole bushel basket full of evidence different from what you have here," and "I'll submit it to the jury, but it will never last in Raleigh, if it gets by the 12," is most prophetic. We do not understand, however, why the able judge proceeded thereafter to submit the case to the jury and to allow its verdict to stand.

While the evidence in the present case is sufficient to disclose that defendant had sexual intercourse with the sixteen-year-old female against her will, it is, in our opinion, devoid of evidence sufficient to show that the sexual act was accomplished "by force" as is required by G.S. 14-27.3(a)(1). *See State v. Alston*, 310 N.C. 399, 312 S.E. 2d 470 (1984), and *State v. Strickland*, 318 N.C. 653, 351 S.E. 2d 281 (1987). Therefore, we hold that the trial court erred in denying defendant's motions to dismiss.

Reversed.

Judge COZORT concurs.

Judge WELLS dissents.

Judge WELLS dissenting.

There is no question in my mind that the State's evidence clearly showed that the victim in this case did not consent to sexual intercourse with defendant. I am also persuaded that the State's evidence showed several acts of physical force used by defendant to accomplish his will and to overcome the victim's will — or to put it more precisely — to overcome her lack of consent. I

would render the trial court's interesting comments less pro-
phetic than found by the majority, and I vote to find no error in
the trial.