STATE

v.

Samuel MAGGS.

No. 89–526–C.A.

Supreme Court of Rhode Island.

March 21, 1991.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., John M. McLoughlin, Sp. Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Catherine Gibran and Barbara Hurst, Asst. Public Defenders, for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on the appeal of the defendant, Samuel Maggs (defendant), from a judgment of conviction entered in the Superior Court following a jury trial. The defendant was convicted of one count of first-degree sexual assault and one count of simple assault and battery. We affirm. The facts of the case are essentially undisputed and are as follows.

On the evening of December 25, 1987, Laura Robinson (Robinson) and two companions traveled to the Old Niantic Pub (also known as D.J.'s) in Bradford, Rhode Island. According to Robinson, who was nineteen years old at the time, she and her friends went to the bar to play pool, although her friends left the bar after staying only about five minutes. Robinson decided to stay at the bar and began talking to defendant, whom she described as an acquaintance. According to Robinson, defendant had been walking around the bar, drinking. The defendant asked Robinson whether she would like to accompany him on a walk outside to "do some cocaine." Robinson testified she was not interested in sharing the cocaine, although she agreed to go for the walk.

Robinson further testified that once outside, she and defendant walked to an area behind the bar and followed some railroad tracks approximately one-quarter of a mile to a bridge. As they approached the bridge, Robinson walked to some nearby

bushes to relieve herself while defendant sat on the bridge, presumably to use the cocaine. According to Robinson, as she and defendant walked back to the bar they barely spoke, although defendant did remark that the cocaine he had just purchased was no good. At one point Robinson asked defendant for a light for her cigarette. As he pulled out his lighter, defendant, for no apparent reason, struck Robinson on the left side of her face with enough force to knock her to the ground. The defendant then grabbed Robinson by the shirt and hit her two more times and attempted to choke her. It was later determined that defendant had struck Robinson with enough force to break her cheekbone. Although she was only five foot and one inch tall compared to defendant, who was six foot four, Robinson was able to push defendant away with her legs, whereupon he helped her up, apologized, and remarked that he could not believe what he had just done.

Robinson and defendant continued to walk back toward the bar. As they did so, apparently defendant asked Robinson if she would like to make love. Robinson responded that they should go back to her house, get cleaned up, and do it there. Robinson testified that she made that suggestion because she did not want to have sex with defendant. As they continued walking, defendant again repeated his desire to have sex with her. At this point Robinson pulled her pants down, walked toward defendant, and she and defendant engaged in sexual intercourse. Robinson testified that she had pulled her pants down and did not scream because she wanted to avoid getting hit again.

When the act was completed, Robinson and defendant returned to the bar. Robinson's face was swollen and bleeding. William Goins (Goins), the bartender who was working that night, subsequently testified at trial that he asked them what had happened. The defendant replied that Robinson's boyfriend had hit her. He then changed his story, admitting that he had hit Robinson. According to Goins, defendant stated, "I hit her and I fucked her."

Robinson cleaned herself up and remained at the bar until closing. Apparently she could not find a ride home before then. While at the bar Robinson told no one about the alleged rape. Robinson testified that another patron, Mike Lynch (Lynch), gave her a ride home around 2 a.m. The defendant and a third passenger were also in the car. After dropping defendant and the third passenger at defendant's home, Lynch stopped the car on the side of the road and he and Robinson fell asleep until 7:30 a.m. At that point Lynch convinced Robinson to go to the hospital in order to have her injured cheek examined. Following an examination and the taking of X rays, Robinson learned she had a fractured cheekbone.

Robinson's treating physician, Dr. Warren Woodworth, a board-certified otorhinolaryngologist (ear, nose, and throat physician), testified that he was on duty at Westerly Hospital on the morning of December 26, 1987, and was called into the emergency room to assess and treat Robinson's injuries. Doctor Woodworth ultimately determined that Robinson had a fractured cheekbone that would require surgical reduction.

On December 29, 1987, four days after the alleged assault, Robinson filed a complaint against defendant with the Westerly police department. The defendant was charged with and, following a jury trial, convicted of first-degree sexual assault and simple assault and battery. The defendant's motion for acquittal and motion for new trial were denied by the trial justice. On the first count, defendant was sentenced to thirty years at the Adult Correctional Institutions (ACI) with eighteen years to serve, twelve years suspended, and twelve years probation. On the second count, defendant was sentenced to one year at the ACI to run concurrently with the sentence imposed on count 1. The defendant filed a notice of appeal to this court on June 9, 1989.

The sole issue presented on appeal is whether the trial justice erred in denying defendant's motion for judgment of acquittal on the first-degree sexual-assault charge.

During trial defendant moved for judgment of acquittal on the first-degree sexual-assault count. Specifically defendant argued that there was no evidence of force or coercion apart from the earlier simple assault and no evidence that the simple assault was perpetrated in order to rape Robinson. The defendant also maintained that no rational juror could have found that he used the degree of force or coercion necessary to induce Robinson to submit to sexual intercourse out of fear since no weapon had been used and no threat of injury had been made in connection with his request for sex. Additionally, defendant argued that although he had previously hit Robinson, that fact, without more, did not give rise to a reasonable inference that in so doing, he intended to intimidate her into having sex with him.

█ We note at the outset the well-settled rule that in considering a motion for judgment of acquittal, the trial justice must view the evidence in the light most favorable to the state and draw all reasonable inferences consistent with the guilt of the defendant. "The motion should be granted only if the evidence so viewed and without regard to either its weight or its credibility is not sufficient to warrant a jury in finding guilt beyond a reasonable doubt." *State v. O'Dell*, 576 A.2d 425, 428 (R.I. 1990) (citing *State v. Sundel*, 121 R.I. 638, 644–45, 402 A.2d 585, 589 (1979)). In the case at bar the trial justice carefully considered all the evidence presented at trial. In denying defendant's motion for judgment of acquittal, the trial justice observed:

"The physical disparities between the parties, the fact that she was struck and injured seriously, struck repeatedly and choked, the reference that he was on cocaine, 'that I could not believe I could do that' all would support the factfinder in concluding that this defendant did commit the act by the use of force and coercion and without her consent."

Thus the dispute in the instant case focuses on the statute defining first-degree sexual assault, G.L.1956 (1981 Reenactment) § 11–37–2, as amended by P.L.

1987, ch. 238, § 1, which provides in pertinent part:

"A person is guilty of first degree sexual assault if he or she engages in sexual penetration with another person, and if any of the following circumstances exist:

\* \* \* \* \* \*

(B) The accused uses force or coercion."

The statutory definition of "force or coercion" is set forth in § 11–37–1, as amended by P.L.1986, ch. 191, § 1:

" 'Force or coercion'—shall mean when the accused does any of the following:

(A) uses or threatens to use a weapon, or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon.

(B) overcomes the victim through the application of physical force or physical violence.

(C) coerces the victim to submit by threatening to use force or violence on the victim and the victim reasonably believes that the accused has the present ability to execute these threats.

(D) coerces the victim to submit by threatening to at some time in the future murder, inflict serious bodily injury upon or kidnap the victim or any other person and the victim reasonably believes that the accused has the ability to execute this threat."

█ Both defendant and the state acknowledge that within the facts of the present case, the only pertinent subsection appears to be part (C). However, defendant argues, in essence, that since there was no evidence that he threatened Robinson during the sexual act itself, it was not possible for a reasonable jury to infer that the prior beating had the effect of coercing Robinson to engage in the sexual act. While recognizing that § 11–37–1(C) encompasses implied as well as express threats, defendant argues that his actions did not permit any reasonable inference of a threat at, or just prior to, intercourse.

An examination of § 11–37–1(C) indicates that there is no requirement that the threat be made during the actual commission of the sexual act. Moreover, as this court has

previously stated in *State v. Burke*, 522 A.2d 725, 735 (R.I.1987):

"[W]e shall not require that a victim hear the actual utterance of threatening words before we shall allow a jury to find reasonable fear of violence. A threat is an expression of an intention to overcome by force. The expression of that intention need not be made in words. *See People v. Barnes*, 42 Cal.3d 284, 721 P.2d 110, 228 Cal.Rptr. 228 (1986) (threats may be verbal or nonverbal)."

■ In light of the facts of the instant case, it appears that Robinson could have reasonably feared for her safety for as long as she was within defendant's reach. The defendant and Robinson were alone in a secluded area, and she had just been the recipient of an unprovoked, inexplainable, impulsive beating from a man who had been drinking alcohol and using cocaine. Only minutes before declaring his desire to have sexual intercourse with her, defendant had hit Robinson so violently that he fractured her cheekbone. Having just been beaten and choked, Robinson, by her own testimony, acquiesced to defendant's request for sex rather than risk the consequences of screaming for help or running away.

In spite of the fact that only a few minutes passed between the sudden unprovoked beating and the sexual assault, defendant attempts to separate the initial simple assault from the sexual assault. In so doing, defendant argues that following his unprovoked outburst of violence, he apologized for his behavior, thereby creating a situation in which Robinson's fear of him was completely subjective and thus insufficient to satisfy the element of coercion necessary to sustain a conviction under § 11–37–1(C).

The defendant relies to a great extent upon *State v. Alston*, 310 N.C. 399, 312 S.E.2d 470 (1984), for the proposition that subjective fear based on past experience is insufficient to prove the force required to support a rape conviction. However, the facts in *Alston* are readily distinguishable from the facts in the case at bar. In *Alston* the victim and the defendant had en-gaged in a relationship that had regularly included acts of violence. One month after they split up, the defendant approached the victim outside her school and forced her to take a walk with him. After walking and discussing their relationship for some time, he told her that he wanted to make love to her and took her to a friend's house. After watching television and talking to the owner of the house, the defendant forced the victim to have sex with him. The victim's only resistance was to say 'no' once and to pull her pants up once after he had pulled them down. The victim's testimony at trial was that she had sex with him only because she was afraid of him. The North Carolina Supreme Court considered whether the defendant had sufficiently intimidated the victim, by either implied or overt threats, to satisfy the element of force. In spite of his past violence and the fact that he had forced her just prior to the incident to walk with him and told her that he was going to "fix" her face, the court found that none of the intimidation was related to the act of sexual intercourse. The court reasoned that the victim's general fear was not enough, in light of their past relationship, to show that the defendant had used the force required to support a conviction of rape.

In the instant case there was no prior relationship between defendant and Robinson. The violence was sudden and unprovoked, unlike the violent history shared by the defendant and the victim in *Alston*. In this case the violence that was directed toward Robinson could very reasonably be connected to the request for sex that followed almost immediately, since defendant had just violently beaten Robinson for no apparent reason and had the ability to do so again. As we have stated in our decision in *State v. Burke*, 522 A.2d at 735:

"An implied threat is as effective as a stated threat, sometimes even more so, especially when the apparent ability to carry out the threat is overwhelming. It is well established that 'threats of force need not be made in any particular manner in order to put a person in fear of bodily harm * * *.'"

Further, defendant argues that evidence of the amount of resistance displayed by Robinson was insufficient to support a conviction for first-degree sexual assault. In *State v. Carvalho*, 122 R.I. 461, 409 A.2d 132 (1979), this court addressed the issue of reasonable resistance and stated:

> "Today the law does not expect a woman, as part of her proof of opposition or lack of consent, to engage in heroics when such behavior would be useless, fruitless, or foolhardy. Fighting to protect one's virtue can be a risky business. All that is required is that the woman offered such resistance as seems reasonable under all the circumstances. *State v. Verdone*, 114 R.I. 613, 621, 337 A.2d 804, 810 (1975). * * * A variety of factors must be considered, such as the comparative strength of the parties, the age and condition of the victim, and the degree of force exhibited by the assailant. If the woman believes that the resistance will lead to her being seriously injured, she is not required to test out this theory by screaming out or exhibiting force against the attacker." *Id.* at 467, 409 A.2d at 135–36.

The evidence presented at trial was more than sufficient to show that Robinson had been overcome by defendant's implied threats of physical harm. She had only moments before been violently beaten for no apparent reason. She was then faced with a situation in which the perpetrator of the unprovoked violent act was pressing her to have sex with him. Robinson testified that she was afraid of defendant and did in fact attempt to delay him by suggesting they go back to her house. In the circumstances Robinson was fearful that if she did anything to provoke defendant, she would once again become a victim to his violent temper.

The decision of the trial justice indicates that in passing upon the defendant's motion for acquittal, he carefully and thoughtfully considered all the evidence. We are of the opinion that when viewed in a light most favorable to the state, it could be found that the evidence of force and coercion exhibited by defendant was sufficient to sustain a conviction of first-degree sexual assault, and therefore, the motion for judgment of acquittal was properly denied.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgments of conviction are affirmed, and the papers in the case may be remanded to the Superior Court.