IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 19-1123

Filed: 17 November 2020

Beaufort County, No. 17 CRS 51505

STATE OF NORTH CAROLINA

       v.

MICHAEL WILLIAMS YELVERTON, Defendant.

Appeal by Defendant from judgment entered 30 May 2019 by Judge Cy A. Grant, Sr. in Beaufort County Superior Court. Heard in the Court of Appeals on 23 September 2020.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Karen A. Blum, for the State.*
>
> *Mark Montgomery for Defendant-Appellant.*

INMAN, Judge.

Michael Williams Yelverton ("Defendant") appeals from a judgment following a jury verdict finding him guilty of second-degree forcible rape. Defendant contends the trial court erred by not instructing on his "reasonable belief of consent" as a defense to rape. Defendant also claims he is entitled to a new trial because his counsel did not request the same instruction. We hold that Defendant has failed to demonstrate reversible error.

## I.     FACTUAL & PROCEDURAL HISTORY

Evidence presented at trial tends to show the following:

Defendant and "Ivy"[1] were friends during high school but only started dating in 2017. Their sexual contact with each other had been limited to kissing and touching above the waist because Ivy "wanted to take it slow" and "was not ready" for anything more. Whenever Defendant did try to touch her below the waist, she told him to stop. Until August 2017, Defendant always respected Ivy's limits.

On 1 August 2017, Ivy visited Defendant at his home before picking up her brother from a car rental facility. At the time, Defendant's roommates were in the living room. Ivy went with Defendant into his bedroom and they began watching television. Their physical contact then became "hot and heavy." Defendant threw Ivy's phone aside, flipped her over, and began kissing her and touching her breasts. Defendant then removed Ivy's shirt as they continued "making out." Ivy was "okay" with all of this.

Defendant then attempted to put his hand down Ivy's shorts. She pushed him away and told him "no." Defendant removed his hand momentarily but made repeated attempts. Ivy twisted her legs to keep them together, but eventually Defendant was able to remove her shorts. She still had on her underwear. Ivy again told Defendant "no" and to stop because she "wasn't ready for that."

---

[1] We use a pseudonym for the adult victim of sexual crimes.

Defendant then pinned Ivy's hands over her head, pushed her underwear aside, and penetrated her vagina with his penis. Ivy told Defendant to stop and said "no," but Defendant continued to penetrate her. Eventually, Ivy gave up because Defendant did not listen. She did not yell or scream, she just "wanted it over with."

At some point Defendant stopped penetrating Ivy and she turned over to grab her phone to respond to text messages and calls from her brother. Defendant took her movement to mean that she "wanted more" and he tried to penetrate her from behind. Before he could, Ivy stood up, went into the bathroom, got dressed, and left the home. Defendant walked with her outside, asking if she was okay. Ivy told Defendant she was okay, but she felt disgusted. She left in her car to pick up her brother.

Defendant repeatedly texted Ivy after the incident and before she reported it to police. Minutes after Ivy left Defendant's home, he asked Ivy via text to promise him she was okay. Ivy responded, "I don't want to talk to you any more, Michael. I didn't want to do that. You wouldn't listen. I'm done." Defendant continued to text Ivy daily. At one point, Defendant asked Ivy why she turned over and did not object to his penetration, to which she replied, "did you not understand how I was trying to get out of there?" Defendant replied "Yes. I understand, and I'm sorry." Defendant later texted Ivy, "I hurt you badly, and I'm so ashamed of myself. I've never acted like that before." Ivy asked of Defendant, "Did I not keep trying to stop you, Michael?"

to which he responded, "to an extent, yes." She wrote back, "Okay, but you knew I wasn't ready to have sex, right?" He replied, "yes, and I am sorry. I really am." Defendant made continued attempts to talk to and see Ivy, despite her pleas that he leave her alone.

Five days after Defendant forced himself on her, Ivy reported the incident to police. She was afraid to go to police on her own because she did not think she was strong enough. She did not want to talk about it and wanted to forget it happened. Ivy was also worried no one would believe her.

On 4 December 2017, a Beaufort County grand jury indicted Defendant on charges of second-degree forcible rape and attempted second-degree forcible rape. Defendant's case was called for trial on 28 May 2019.

At trial, Ivy testified, among other things, that before and on the date of the charged offenses, she had told Defendant she was not ready to have sex with him; that Defendant forcibly penetrated her vagina with his penis without her consent; and that Defendant attempted to penetrate her again from behind without her consent. The State also presented four witnesses to whom Ivy recounted being sexually assaulted—a friend Ivy spoke with minutes after leaving Defendant's home; Ivy's brother, whom she spoke with after reaching the rental car lot that night; and two other family members to whom Ivy reported the incident within the next several days.

Defendant testified that he thought Ivy consented to sex. Although he admitted Ivy stated "she was not ready" that night, he denied that she said "no" or "stop" multiple times, contrary to her testimony. Defendant did concede that "she may have pushed me a little bit" when he initiated sexual contact. Two of Defendant's roommates testified they did not hear any commotion or cries for help from the bedroom that night. They also testified that Defendant and Ivy walked out of the bedroom holding hands, that Ivy did not seem upset, and Defendant and Ivy said goodbye at her car.

The trial court instructed the jury that the State must prove three things beyond a reasonable doubt for them to find Defendant guilty of second-degree forcible rape: 1) Defendant engaged in vaginal intercourse with Ivy, 2) Defendant used or threatened to use force sufficient to overcome any resistance Ivy might make, and 3) Ivy did not consent and it was against her will.

The jury found Defendant guilty of second-degree forcible rape and not guilty of attempted second-degree forcible rape. The trial court sentenced Defendant to a term of 60 to 132 months of imprisonment. Defendant gave notice of appeal in open court.

## II. ANALYSIS

### A. *"Reasonable Belief" of Consent Defense to Rape*

Defendant argues that the trial court erred, or plainly erred, by failing to provide a jury instruction on the defense of consent based on Defendant's "reasonable belief" that Ivy consented to the sexual acts. We hold there was no error.

Defendant's counsel did not request an instruction on his reasonable belief that Ivy consented. Failure to request a jury instruction results in plain error review on appeal. *State v. Campbell*, 340 N.C. 612, 640, 460 S.E.2d 144, 159 (1995). As such, we review whether there was a fundamental error, establishing prejudice, that "had a probable impact on the jury's finding that the defendant was guilty." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)).

A trial court must "instruct the jury on all substantial features of a case raised by the evidence." *State v. Shaw*, 322 N.C. 797, 803, 370 S.E.2d 546, 549 (1988) (citation omitted). "Any defense raised by the evidence is deemed a substantial feature of the case and requires an instruction." *State v. Hudgins*, 167 N.C. App. 705, 708, 606 S.E.2d 443, 446-47 (2005) (citing *State v. Smarr*, 146 N.C. App. 44, 54, 551 S.E.2d 881, 887-88 (2001)). A jury instruction is required for a defense if there is substantial evidence of each element of the defense when the evidence is viewed in the light most favorable to the defendant. *State v. Ferguson*, 140 N.C. App. 699, 706, 538 S.E.2d 217, 222 (2000). Substantial evidence is such evidence that a reasonable person would find sufficient to support a conclusion. *State v. Vause*, 328 N.C. 231,

236, 400 S.E.2d 57, 61 (1991). "Failure to instruct upon all substantive or material features of the crime charged is error." *State v. Bogle*, 324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989) (citations omitted).

Our General Statutes provide that:

> (a) A person is guilty of second-degree forcible rape if the person engages in vaginal intercourse with another person:
> (1) By force and *against the will of the other person*; or
> (2) Who has a mental disability or who is mentally incapacitated or physically helpless, and the person performing the act knows or should reasonably know the other person has a mental disability or is mentally incapacitated or physically helpless.

N.C. Gen. Stat. § 14-27.22(a) (2019) (emphasis added). "[A]gainst the will of the [person]" means "without [their] consent." *State v. Carter*, 265 N.C. 626, 630, 144 S.E.2d 826, 829 (1965). "Consent by the victim is a complete defense [to rape], but consent which is induced by fear of violence is void and is no legal consent." *State v. Alston*, 310 N.C. 399, 407, 312 S.E.2d 470, 475 (1984); *see also State v. Smith*, 360 N.C. 341, 344, 626 S.E.2d 258, 260 (2006); *State v. Moorman*, 320 N.C. 387, 389-92, 358 S.E.2d 502, 504-06 (1987).

Defendant asserts that the trial court should have provided the jurors the following instruction on consent: "[I]f the defendant reasonably believed that the complainant was consenting to intercourse, [the jury] should return a verdict of not guilty." This Court has not recognized Defendant's proposed variation on the consent

defense—a "reasonable belief of consent."[2] Nor has the North Carolina Supreme Court recognized such a defense. In *State v. Moorman*, our Supreme Court held that a defendant could be convicted of rape by force and against the will of the victim, who was incapacitated and asleep at the time, despite the defendant's testimony that he mistook the victim for someone he knew and believed she consented to vaginal intercourse. *Moorman*, 320 N.C. at 389-92, 358 S.E.2d at 504-06.[3]

The General Assembly has used language of reasonableness in other portions of our General Statute's Article 7b on "Rape and Other Sex Offenses." The legislature defines revocation of consent as "that [which] would cause a *reasonable person* to believe consent is revoked" under the article's definition section. N.C. Gen. Stat. § 14-27.20(1a)(b) (2019) (emphasis added). In the second-degree forcible rape provision, when considering a victim's mental disability, incapacitation, or physical helplessness and their ability to engage in consensual intercourse, "the person performing the act [must] know[] or should reasonably know the other person has a mental disability or is mentally incapacitated or physically helpless" to be guilty of rape. *Id.* § 14-27.22(a)(2).

---

[2] In an unpublished opinion, this Court expressly rejected this theory of defense to a rape charge. *State v. Gallegos*, No. COA16-1058, 2017 WL 3255195, at *2-3 (Aug. 1, 2017 N.C. Ct. App.) (rejecting a defendant's argument that his "reasonable belief" that the alleged victim was consenting should be recognized as an affirmative defense to rape).

[3] The *Moorman* Court nonetheless overturned the defendant's rape conviction and awarded him a new trial on the grounds of ineffective assistance of counsel. *Moorman*, 320 N.C. at 402-03, 358 S.E.2d at 512.

Consistent with the statutory language and our Supreme Court's holding in *Moorman*, we reject Defendant's argument that he was entitled to a jury instruction that he would not be guilty of rape if he mistakenly believed Ivy consented to vaginal intercourse. Because a defendant's knowledge of whether the victim consented is not a material element of rape and we have not recognized mistaken belief in consent as a defense to rape, the trial court did not err in failing to provide an instruction to that effect.

To support his argument for the defense of "reasonable belief of consent," Defendant relies on North Carolina Rule of Evidence 412(b)(3), which allows the admission of evidence of

> a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged or behaved in such a manner as to *lead the defendant reasonably to believe that the complainant consented*.

N.C. Gen. Stat. § 8C-1, Rule 412(b)(3) (2019) (emphasis added). Defendant contends that this Court—through its application of Rule 412(b)(3)— recognized a defendant's reasonable belief in consent as a defense to rape in *State v. Ginyard*, 122 N.C. App. 25, 468 S.E.2d 525 (1996). We did not. In that case, this Court rejected the defendant's contention that he had a reasonable belief complainant consented to sex based on evidence of one prior consensual sexual encounter between complainant and two other men establishing "a distinctive pattern of sexual behavior [ ] relevant to

the issue of consent" in his case. *Id.* at 32-33, 468 S.E.2d at 530 (citing *State v. Fortney,* 301 N.C. 31, 41, 269 S.E.2d 110, 116 (1980)). *Ginyard* is inapposite not only on its facts, but because Rule 412 concerns the admissibility of evidence at trial, not a substantive defense.

In this case, evidence of Ivy's past sexual behavior showed that she had *denied* consent to Defendant in every preceding encounter between them, telling him to "stop," that "she was not ready," and she "wanted to take it slow." This evidence, even when viewed in a light most favorable to Defendant, simply cannot support his claimed "reasonable belief" that Ivy consented to sexual acts on 1 August 2017. Defendant's argument that he believed Ivy consented to vaginal intercourse that night because he was able to achieve that goal simply underscores Defendant's mistake of law, not of any fact.

In *State v. Alston*, our Supreme Court held the State presented substantial evidence of non-consent when the victim "testified unequivocally that she did not consent to sexual intercourse" and told the defendant that she was not ready to go to bed with him immediately before penetration. *Alston*, 310 N.C. at 407-08, 312 S.E.2d at 475. Even when viewed in the light most favorable to Defendant, there was similar substantial evidence here that Ivy did *not* consent to sex with Defendant on 1 August 2017. Defendant admitted that Ivy said she "was not ready" that night and that Ivy "may have pushed him a little bit" in resistance to his sexual advances. Ivy said "no"

to Defendant's advances when he put his hand down her pants. She said "stop" again before Defendant proceeded to remove her pants and penetrate her while forcibly holding her hands above her head.

The trial court properly instructed the jury on the second-degree forcible rape charge itself. In *State v. Rhinehart*, this Court upheld a similar jury instruction, reasoning that it was "clearly sufficient to convey the [substance of] defendant's request for a charge that consent is a defense to the crime of rape." 68 N.C. App. 615, 619, 316 S.E.2d 118, 121 (1984). Unlike the defendant in *Rhinehart*, in this case Defendant did not even request a consent defense instruction at trial.

The trial court was not required to give an instruction on the defense of consent based on Defendant's mistaken belief because this Court does not recognize such a defense and the evidence did not warrant an additional instruction. Defendant has failed to demonstrate error, much less plain error.

## B. *Ineffective Assistance of Counsel Claim*

In the alternative, Defendant argues he has been denied his right to effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed. 2d 674 (1984), because his defense counsel did not request an instruction on Defendant's reasonable belief of consent defense. Because we have already concluded that Defendant was not entitled to such an instruction, we conclude that Defendant was not denied the right to effective assistance of counsel.

## III.    CONCLUSION

Defendant has failed to demonstrate error, let alone plain error, in the trial court's failure to instruct the jury on "reasonable belief of consent" as a defense to the rape charge. Since Defendant's ineffective assistance of counsel argument relies upon counsel's failure to request the same instruction, that argument also fails.

NO ERROR.

Judges DILLON and YOUNG concur.