STATE OF NORTH CAROLINA v. JACKIE DARRELL MOORE

No. 285PA85

(Filed 18 February 1986)

**1. Kidnapping § 1.2— confinement or removal for purpose of terrorizing victim— evidence sufficient**

The trial judge did not err by submitting a kidnapping charge to the jury on the theory that a purpose for the confinement or removal was to terrorize the victim where the evidence was sufficient to support a finding that defendant intended by his actions to put the victim in a state of intense fright or apprehension so that she would agree to stay with him, and that he removed her to a trailer and confined her there for that purpose. N.C.G.S. § 14-39.

**2. Kidnapping § 1— confinement for holding hostage—must be coercion of third party**

In determining whether the evidence supported a finding that a defendant in a kidnapping case intended to hold his wife as a hostage, evidence of his attempts to coerce her to come back to him was not considered; rather, the determination was whether there was evidence that defendant intended to hold the victim as security for the performance or forbearance of some act by a third person.

**3. Kidnapping § 1.2— confinement for purpose of holding hostage—evidence sufficient**

The evidence in a kidnapping case was sufficient to support a finding that the defendant confined the victim as security for the prevention of his arrest by law enforcement authorities where there was no evidence that defendant intended to hold the victim as a hostage at the time he first removed her from her employer's parking lot but there was evidence from which the jury could have found that defendant confined the victim for the purpose of negotiating his own release once the situation got out of hand.

**4. Kidnapping § 1.2— confinement or removal for purpose of inflicting serious bodily harm—evidence not sufficient**

The trial court erred in a kidnapping prosecution by instructing the jury that it could consider the infliction of serious bodily harm as a purpose for the defendant's confinement or removal of the victim where the only evidence of actual injury was that the defendant struck the victim with a rifle in order to force her to get into the car and thereafter made no attempt to harm her physically. The assault was the means rather than the purpose of the removal.

**5. Criminal Law § 171— kidnapping—three theories—one not supported by evidence—new trial**

A kidnapping prosecution was remanded for a new trial where three underlying purposes for the kidnapping were submitted to the jury, one of the purposes was not supported by the evidence, and the jury did not indicate which purpose formed the basis for its guilty verdict.

State v. Moore

PETITION by the State for discretionary review pursuant to N.C.G.S. § 7A-31 and petition by the defendant for writ of certiorari pursuant to N.C. R. App. P. 21(a)(2) to review the decision of the Court of Appeals, 74 N.C. App. 464, 328 S.E. 2d 864 (1985), which awarded the defendant a new trial on the kidnapping charge. Judgment was entered 12 December 1983 in Superior Court, ALAMANCE County, *Judge Thomas H. Lee* presiding. Heard in the Supreme Court on 18 November 1985.

The defendant was charged in bills of indictment, proper in form, with first degree kidnapping and assault with a deadly weapon with intent to kill inflicting serious injury. Upon his plea of not guilty, he was convicted by a jury of first degree kidnapping and assault with a deadly weapon inflicting serious injury. He was sentenced to twelve years for the kidnapping and three years for the assault. The Court of Appeals found that the defendant had abandoned his appeal of the conviction of assault with a deadly weapon inflicting serious injury but ordered a new trial on the kidnapping charge.

*Lacy H. Thornburg, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Acting Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellee.*

BILLINGS, Justice.

Although the defendant contended in the Court of Appeals that the evidence was insufficient to justify submission of the kidnapping charge to the jury on any theory, after the Court of Appeals awarded the defendant a new trial on the ground that there was insufficient evidence to support the charge of kidnapping upon the theory that the defendant confined or removed the victim for the purpose of holding her as a hostage, it declined to consider the sufficiency of the evidence on the other theories, saying: "Having awarded a new trial we need not reach the other issues brought forth by the defendant."

The State appealed the award of the new trial, and the defendant asked us to determine whether the two other theories of kidnapping on which the jury was instructed were supported by

the evidence. We conclude that although there was sufficient evidence to support the verdict upon two theories under the kidnapping statute (that the defendant's purpose was to hold the victim as a hostage and to terrorize her), there was insufficient evidence to support a verdict upon the theory that the defendant confined or removed the victim for the purpose of doing serious bodily harm. Because the jury was instructed on all three theories, we are unable to determine whether the verdict was based upon the theory which was not supported by the evidence. Therefore, we modify and affirm the decision of the Court of Appeals to grant the defendant a new trial.

The evidence offered at trial tended to show the following facts:

The defendant, Jackie Darrell Moore, and the victim, Priscilla Moore, were married in 1973. Three children were born of the marriage. In September 1983 the parties separated, and the victim and the two daughters moved into her parents' home. The couple's three-year-old son, Josh, stayed with the defendant. On 3 October 1983 at approximately 5:10 p.m. as the victim was leaving her place of employment, she saw the defendant sitting in his car in her employer's parking lot. Josh was also in the car and called out to his mother. The victim approached the car, lifted Josh out through the window, and started to leave with him, saying to the defendant that he could pick Josh up later at her mother's house. The defendant ordered her to put the child back into the car and to get into the front seat. The victim placed the child back into the car but refused to get into the vehicle. The defendant then picked up a rifle, pointed it at the victim and again ordered her into the car. The victim refused and ducked beside the car. The defendant then exited the vehicle and attempted to push the victim into the car. When she continued to resist, the defendant struck her in the head with the butt of the rifle. The victim then got into the car. As the defendant was getting back into the car, the victim attempted to flee, but the defendant caught her, struck her with the rifle again and returned her to the car. These blows opened a wound in the victim's head which required nine stitches to close.

The defendant then drove the victim to a trailer which was their former marital home. As they were driving, the victim told

her husband he was going to have to take her to a hospital to get her head sewn up. He refused but said that he would take care of her when he got her home. When they pulled into the driveway at the trailer, the defendant told the victim that he would shoot her if she tried to run. They went inside and he washed off her head and made an ice pack for her. The victim convinced the defendant to let her call her parents; she told her father she needed medical treatment. Her father said help was on the way.

During the period the couple and their son were in the trailer, a little less than three hours, the defendant received several phone calls. The victim testified about the defendant's side of a telephone conversation in which the defendant said he did not want to go to jail and that he was not coming out unless they promised him he would not go to jail. The victim testified that at one point the defendant was talking on the phone with his brother and said that the victim was trying to take away his kids and that he would kill her first before she did that. The defendant held a gun almost constantly when the parties were inside the trailer and threatened to kill himself several times. At one point, he asked the victim to pull the trigger to kill him. The victim testified that she was convinced the defendant would have shot her had she tried to leave the trailer.

An ambulance arrived and two men came to the door, but the defendant did not let them in. Shortly thereafter the defendant's brother arrived and talked to the defendant, who refused to let anyone in and refused to let anyone leave the trailer. Finally, the defendant agreed to let one emergency medical technician in. The person who went in was a police officer dressed as an ambulance service member. After frisking him for weapons, the defendant let the officer remain inside long enough to dress the victim's wound. The defendant kept a rifle pointed at the officer or at the victim while the officer was inside the house. He complained of pain in his chest but did not want to go to the hospital and would not let the officer take Josh or the victim out of the trailer.

Eventually, after the victim assured the defendant that she would stay with him and stand by him while he got help, he agreed to leave the trailer. The defendant, the victim and Josh came out of the trailer at 8:14 p.m., and the defendant was taken into custody.

The defendant testified in his own behalf. He stated that he and his wife had separated on a previous occasion, and that when she left him the second time he begged her to change her mind. He admitted going to her place of employment on 3 October 1983, but stated that his intention was only to talk to her and convince her to come back and live with him. When she began to run away, he struck her with the gun. He helped her into the car and drove to the trailer because he was scared.

Kidnapping is defined by statute as follows:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

(1) Holding such other person for ransom or as a hostage or using such other person as a shield; or

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

(3) Doing serious bodily harm to or terrorizing the person so confined, restraining [sic] or removed or any other person.

(4) Holding such other person in involuntary servitude in violation of G.S. 14-43.2.

(b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class D felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

N.C.G.S. § 14-39 (1981 and Cum. Supp. 1985).

Since kidnapping is a specific intent crime, the State must prove that the defendant unlawfully confined, restrained, or removed the person for one of the eight purposes set out in the statute. The indictment in a kidnapping case must allege the purpose or purposes upon which the State intends to rely, and the State is restricted at trial to proving the purposes alleged in the indictment. *State v. Brown*, 312 N.C. 237, 321 S.E. 2d 856 (1984); *State v. Taylor*, 304 N.C. 249, 283 S.E. 2d 761 (1981), *cert. denied*, 463 U.S. 1213, 77 L.Ed. 2d 1398, *rehearing denied*, 463 U.S. 1249, 77 L.Ed. 2d 1456 (1983). Although the indictment may allege more than one purpose for the kidnapping, the State has to prove only one of the alleged purposes in order to sustain a conviction of kidnapping. *State v. Sellars*, 52 N.C. App. 380, 278 S.E. 2d 907, *appeal dismissed and cert. denied*, 304 N.C. 200, 285 S.E. 2d 108 (1981). The indictment in the present case alleged the following:

> The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did kidnap Priscilla Moore, a person who had attained the age of 16 years, by unlawfully confining her and by removing her from one place to another, without her consent, and for the purpose of holding her as a hostage, doing serious bodily injury to her and terrorizing her. Priscilla Moore was seriously injured.

The trial judge submitted to the jury all three purposes alleged in the indictment. The charge to the jury contained the following:

> Third, the State must prove beyond a reasonable doubt that the defendant, Jackie Darrell Moore, did this, that is, that he unlawfully confined Priscilla Moore or unlawfully removed her from one place to another for one or more of the following purposes: For the purpose of holding Priscilla Moore as a hostage. To hold a person as a hostage means to hold her as security for the performance or the forbearance of some act by some third person. The State contends, and the defendant denies, that the defendant held Priscilla Moore as security for the purpose of preventing or delaying law enforcement officers to make a lawful arrest of the defendant. The second purpose that you may consider is for the purpose

of terrorizing Priscilla Moore. Terrorizing means more that just putting another in fear. It means putting that person in some high degree of fear, a state of intense fright or apprehension. And the third purpose that you may consider is for the purpose of doing serious bodily injury to Priscilla Moore. Serious bodily injury is defined in the law as such physical injury as causes great pain or suffering. If you rely on this purpose to satisfy the third element, you must also be satisfied beyond a reasonable doubt that the unlawful confinement in the automobile or trailer or the unlawful removal from the parking lot to the trailer was a separate complete act independent of and apart from the infliction of the serious bodily injury.

So the third element, members of the jury, to summarize, requires that the State prove beyond a reasonable doubt that the unlawful confinement or removal of Priscilla Moore by the defendant was for one of those—one or more of those three purposes, for the purpose of holding her as a hostage as that has been defined for you or for the purpose of terrorizing Priscilla Moore or for the purpose of doing serious bodily injury to Priscilla Moore, and in which case if you rely on that purpose you must also be satisfied beyond a reasonable doubt that the unlawful confinement in the automobile or trailer or the unlawful removal from the parking lot to the trailer was a separate and complete act independent of and apart from the infliction of serious bodily injury upon Priscilla Moore.

All that is required, members of the jury, for the State to satisfy the third element is that the defendant's purpose was to hold Priscilla Moore as a hostage or terrorize her or inflict upon her serious bodily injury. You need not find, to satisfy the third element beyond a reasonable doubt, that any of those three purposes were actually accomplished.

The jury returned a verdict finding the defendant guilty of first degree kidnapping, but it did not specify which purpose or purposes contained in the indictment formed the basis for its verdict.

[1]   The defendant contends that the trial judge erred in allowing the jury to consider kidnapping on the theory that the defendant

confined or removed the victim for the purpose of terrorizing her. In determining the sufficiency of the evidence to support the jury's verdict on that question, the test is not whether subjectively the victim was in fact terrorized, but whether the evidence supports a finding that the defendant's purpose was to terrorize her.

The trial judge correctly defined terrorizing as "more than just putting another in fear. It means putting that person in some high degree of fear, a state of intense fright or apprehension." *See State v. Jones*, 36 N.C. App. 447, 244 S.E. 2d 709 (1978).

In the instant case, the evidence showed that the defendant had already beaten the victim with his rifle, bruising her shoulder and opening up a gash in her head that required nine stitches to close. When they pulled into the driveway at the trailer, the defendant threatened to shoot the victim if she tried to run. During a telephone conversation with his brother during the hours in the trailer, the defendant said that he would kill the victim before letting her take his children away from him. The defendant kept a gun with him constantly when they were in the trailer. At times he pointed the gun at the victim or at the police officer who was treating the victim's wound, and at times he pointed it at himself. Several times he threatened suicide, and at one point he begged the victim to pull the trigger to kill him.

Although we have found no cases in which threatening to commit suicide has alone been held to constitute terrorizing, the threat of suicide was a component in a Minnesota case in which the defendant was convicted of terroristic threats after making phone calls to his former wife's sister threatening to kill the former wife, the wife's fiance, and himself if his former wife and her fiance got married. *State v. Fischer*, 354 N.W. 2d 29 (Minn. Ct. App. 1984). Here, the defendant did not merely threaten to commit suicide; he held the victim at gunpoint for almost three hours after inflicting a serious head injury upon her, during which time he threatened to shoot himself in her presence and in the presence of their three-year-old son, and he tried to get her to shoot him. The victim testified, "I was very scared. I was horrified. I just knew he was going to shoot—shoot me and then shoot himself." In addition, he made threats against her life if she tried to take the children away from him. Considered in the light

most favorable to the State, the evidence would support a finding that the defendant intended by these actions and threats to put the victim in a state of intense fright or apprehension so that she would agree to stay with him, and that he removed her to the trailer and confined her there for that purpose. The defendant's assignment of error to the trial judge's submission of the kidnapping charge to the jury on the theory that a purpose for the confinement or removal was to terrorize the victim is without merit.

[2]  Next, we consider the defendant's contention, with which the Court of Appeals agreed, that the evidence did not support a finding that the defendant intended to hold the victim as a hostage.

The trial judge instructed the jury that to "hold a person as a hostage means to hold her as security for the performance or the forbearance of some act by some third person. The State contends, and the defendant denies, that the defendant held Priscilla Moore as security for the purpose of preventing or delaying law enforcement officers to make a lawful arrest of the defendant." The definition of hostage which the trial judge gave requires that the victim be held to coerce forbearance or performance by a third party, not by the person held. This is the language used in the North Carolina pattern jury instruction on kidnapping (see N.C.P.I. — Crim. 210.20), and neither party assigns error to the definition given. Although this court has not had occasion to discuss the definition of hostage, the Court of Appeals adopted the above definition in State v. Lee, 33 N.C. App. 162, 234 S.E. 2d 482 (1977), relying on State v. Crump, 82 N.M. 487, 484 P. 2d 329 (1971). In Crump, the New Mexico Supreme Court said that a definition of hostage that allowed consideration of demands made directly on the victim was too broad. Id. at 492, 484 P. 2d at 334.

We agree with the definition of hostage adopted by the Court of Appeals in Lee and applied by the trial judge in this case. Therefore, in determining whether the evidence in the instant case supports a finding that the defendant intended to hold his wife as a hostage, we do not consider evidence of his attempts to coerce her to come back to him. Rather, we must determine whether there is evidence that he intended to hold the victim as security for the performance or the forbearance of some act by a third person.

[3]   After quoting N.C.G.S. § 14-39, the kidnapping statute, the Court of Appeals' opinion says: "In order to be guilty of kidnapping the defendant must have formed the intent to do one of these eight purposes at the time he confined, restrained or removed the victim. *See State v. Alston*, 310 N.C. 399, 312 S.E. 2d 470 (1984)." 74 N.C. App. at 467, 328 S.E. 2d at 866. Then, in finding that the evidence did not support a finding that the defendant's purpose was to hold the victim as a hostage, the court further said: "Our examination of the record reveals no evidence to support a finding that *at the time the defendant originally confined, restrained and removed the victim* he did so for the purpose of holding her as a hostage within the meaning of the North Carolina law." *Id.* at 469, 328 S.E. 2d at 867 (emphasis added).

We believe the Court of Appeals incorrectly applied this Court's recent case of *State v. Alston*, 310 N.C. 399, 312 S.E. 2d 470 (1984), and therefore incorrectly concluded that the evidence in the instant case was insufficient to support a finding that the defendant confined the victim for the purpose of holding her as a hostage.

In *Alston*, the defendant was charged in an indictment which alleged that the defendant removed the victim for the purpose of facilitating the commission of the felony of second degree rape. This Court said that under that indictment "the State was, therefore, required to introduce substantial evidence tending to show that the defendant had the intent to rape Brown *at the time he removed her*." *Id.* at 405, 312 S.E. 2d at 474 (emphasis added). The Court then found that the evidence was insufficient to support conviction because there was no evidence that at the time the defendant, by force and intimidation, removed the victim from one place to another, he had an intention to rape her. In fact, the positive evidence from the victim showed that the defendant's desire to engage in sexual relations arose after the removal, and there was no substantial evidence of forcible confinement, restraint or removal thereafter for the purpose of committing rape. Clearly, a different case would have been presented if, although not having formed an intent to commit rape at the time of the initial removal, the defendant had *further removed* the victim after forming an intent to rape her, or had restrained or confined her beyond the restraint inherent in the crime of rape (*see State v.*

*Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978) ) for the purpose of facilitating the commission of the rape.

In the instant case, there is no evidence that at the time the defendant first removed the victim from the employer's parking lot he intended to hold her as a hostage. The positive evidence was that at that time his purpose was to convince her to return to him. However, there is evidence from which the jury could have found that once the situation got out of hand for the defendant, he confined the victim for the purpose of negotiating his own release.

After testifying that the defendant would not take her to the hospital for treatment of her head injury, the victim said that the defendant allowed her to call her father who told her that help (apparently meaning medical help) was on the way. She was then asked: "Did the defendant say anything about help being on the way? Did he make any statement regarding . . . ." Her answer was: "He was—he was scared that they were coming after him for what he had done." Thereafter, the defendant prevented the victim and Josh from leaving the trailer and refused to let anyone except the one police officer dressed as an ambulance service member enter the trailer. He talked with other people, including his brother, by telephone, and "He would just tell them that he wasn't going to do anything unless they could promise him that he wouldn't go to jail . . . ." Thus, the evidence was sufficient to support a finding that the defendant confined the victim as security for prevention of his arrest by law enforcement authorities and to extract from them a promise that he would not go to jail, which constitutes holding as a hostage within the meaning of the kidnapping statute. This assignment of error is overruled.

[4] Finally, we examine the defendant's contention that there is insufficient evidence to support a verdict based upon a theory that his acts were for the purpose of doing serious bodily harm to the victim. The only evidence of actual infliction of injury was that the defendant struck the victim with a rifle in order to force her to get into the car. He did not force her into the car or confine her in order to assault her with the rifle. Thereafter he made no attempt to harm her physically and in fact permitted someone to enter the trailer to render medical aid. Although he told her that he would shoot her if she tried to run and told someone on

the telephone that he would kill his wife if she tried to take the children, none of this evidence establishes that a purpose for the removal or confinement was to inflict injury. Because there was no evidence of intent to do bodily harm other than the harm that actually was inflicted when the defendant struck the victim with the rifle, and that assault was the *means* rather than the *purpose* of the removal, it was error for the trial judge to instruct the jury that it could consider the infliction of serious bodily harm as a purpose for the defendant's confinement or removal of the victim.

[5] It is generally prejudicial error for the trial judge to permit a jury to convict upon a theory not supported by the evidence. *State v. Dammons*, 293 N.C. 263, 237 S.E. 2d 834 (1977). The jury did not indicate which of the three purposes that it was allowed to consider formed the basis for its verdict. Although two of the purposes which the jury was allowed to consider were supported by the evidence, we cannot say that the verdict was not based upon the purpose erroneously submitted. Therefore, we remand the case to the Court of Appeals for further remand to the Superior Court of Alamance County for a new trial on the charge of first degree kidnapping.

Modified and affirmed.